UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
INTERCITY LOGISTICS LLC,

                       Plaintiff,

           -against-

CARGO WORLD USA, INC.; LEVON MIRZOYAN
a/k/a LEVAN MIRZOEV; LILI TOR; KETRIN DOE,

                       Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-02138 (OEM) (RML)

ORELIA E. MERCHANT, United States District Judge:

On February 25, 2024, Plaintiff Intercity Logistics, LLC ("Intercity") commenced this action against Defendants Cargo World USA, Inc. ("Cargo World"), Levon Mirzoyan ("Mirzoyan"), Lili Tor ("Tor"), and Ketrin Doe ("Doe"), asserting claims for fraudulent inducement, civil conspiracy, breach of contract, unjust enrichment, conversion, and breach of fiduciary duty. Amended Complaint ("Am. Compl."), ECF 22. Before the Court is Defendants' Cargo World USA and Mirzoyan (together, the "Defendants") motion to under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Notice of Motion, ECF 18.

For the following reasons Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff Intercity is a limited liability company ("LLC") located in and organized under the laws of the Russian Federation. Am. Compl. ¶ 1. Intercity's members, Anton Igorevich Kutko and Dmitry Vyacheslavovich Sintsov, are both domiciled in the Russian Federation. Plaintiff's Letter in Response to Court's 12/10/2024 Order ("Pl.'s LLC Ltr."), ECF 19. Intercity provides air

---

[1] In evaluating Defendants' motion to dismiss, the following allegations asserted in the complaint are accepted as true.

1

delivery services for international cargo on behalf of its clients to and from points of origin, with destinations in the Russian Federation and abroad. Am. Compl. ¶ 45. In the normal course of business, Intercity purchases goods at the request of its customers and then arranges for the sale of the goods and their delivery to a destination designated by its customers. *Id.*

Defendant Cargo World is a New York corporation with its principal place of business in Staten Island, New York. *Id.* ¶ 2. Cargo World is an international shipping company providing freight and logistics services to customers worldwide, including ocean freight forwarding, air freight forwarding, cargo warehousing, customs clearance, and cargo consolidation services. *Id.* ¶¶ 27-28.

Defendants Mirzoyan, Tor, and Doe are natural persons and citizens of New York. *Id.* ¶¶ 4-5, 8, 10. They were, at all relevant times, shareholders and general managers of Cargo World, had signatory authority and direct control over the company, and conducted day-to-day operations. *Id.* ¶¶ 11-25. Plaintiff alleges that the three individual defendants are Cargo World's alter ego. *Id.* ¶¶ 34-40.

On or about March 7, 2023, Intercity entered into an agreement to purchase certain medical ophthalmological equipment from Cargo World, specifically the "WL Allegretto Wave Eye Q 400HZ Excimer Laser 2012 Ser 1010-2-835" ("WaveLight System"). *Id*. ¶ 46. The total value of the purchase agreement, including shipping, was $74,904.40. *Id.* ¶¶ 46-47. Prior to contracting with Cargo World, Intercity entered an agreement to sell the WaveLight System to its customer, Pacific Route LLC, for $84,946.69. *Id*. ¶ 48.

On or about March 13, 2023, Intercity wired $74,904.40 to Cargo World's bank account at JP Morgan Chase. *Id.* ¶ 49. Approximately ten days later, Cargo World then informed Intercity that the funds were frozen by its bank and that the transaction was on hold because it was the

2

subject of an investigation by the United States Department of Commerce, Bureau of Industry and Security ("BIS"), on the basis that the transaction was prohibited due to sanctions against Russia. *Id.* ¶ 50. Between May 2023 and the end of 2024, Intercity inquired about the purported hold on the funds. *Id.* ¶ 51. Cargo World maintained that the transaction remained under investigation and that it was prohibited by law from sharing any further information. *Id.* Cargo World also told Intercity in May 2023 that the funds had been received into its account but that they were nevertheless frozen or "blocked" pending the BIS investigation. *Id.* ¶ 51-52.

Intercity contacted a special agent at BIS, who revealed that BIS had not initiated any investigation related to the sale of the WaveLight System nor had BIS directed that any related funds be frozen or blocked. *Id.* ¶ 54.

On December 8, 2023, Cargo World advised Intercity that BIS "is not involved in the decision to hold bank transaction from [Plaintiff] to [Defendants]" and that Intercity's "transaction is currently on hold by [Defendants'] accounting department. . . ." *Id.* ¶ 55. Defendants then informed Intercity via email that the funds were "non-refundable." *Id.* ¶ 56.

Intercity never received the WaveLight System or a refund of the $74,904.40 paid to Defendants. *Id.* ¶ 57. Intercity was unable to fulfill its purchase agreement with Pacific Route LLC and was forced to return the $84,946.69 to Pacific Route LLC. *Id.*

## PROCEDURAL HISTORY

Intercity commenced this action on March 25, 2024, and Defendants Cargo World and Mirzoyan entered an appearance on May 14, 2024. On June 24, 2024, Defendants filed a motion for a pre-motion conference on an anticipated motion to dismiss. The Court denied that request and set a briefing schedule. Defendants' motion to dismiss was fully briefed as of November 15, 2024. On December 10, 2024, the Court issued an order directing Plaintiff to file a supplemental

3

letter stating the citizenship of all its members, as necessary to establish this Court's subject matter jurisdiction. Plaintiff responded on December 18, 2024, identifying the names of each of its members and verifying their foreign citizenship. *See* Pl.'s LLC Ltr.

On February 25, 2025, apprised of another deficiency in Plaintiff's complaint, the Court issued an order to show cause why this action should not be dismissed for lack of subject matter jurisdiction due to Plaintiff's failure to sufficiently allege the citizenship of individual defendants Mirzoyan, Tor, and Doe. Plaintiff responded on March 4, 2025, stating the citizenship of the individual defendants and seeking leave to amend the complaint. ECF 21. Leave was granted, and the Court issued an order noting that Defendants' motion to dismiss was not mooted by the proposed amendments.[2]

In its February 25, 2025 order, the Court also requested supplemental briefing from Plaintiff addressing why the Court should not dismiss its fraudulent inducement, unjust enrichment, and conversion claims as duplicative of its breach of contract claim. Plaintiff responded on March 6, 2025. Plaintiff's Supplemental Brief ("Pl.'s Supp. Br."), ECF 21.

## LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction

---

[2] *See* Order dated March 6, 2025 ("Given that the proposed amendments are limited to issues of subject matter jurisdiction not addressed in Defendants' motion to dismiss, the Court does not believe Plaintiff's proposed amended complaint will require defendants to file an entirely new motion to dismiss. An amended pleading does not necessarily moot a motion to dismiss. 'When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint.' *Iliano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008). To further the just, speedy, and inexpensive determination of this action, the Court will consider Defendant's arguments in light of the amended complaint.").

4

must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (EJ), 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022).

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). Facial attacks challenge the sufficiency of the pleading and, like a motion under Rule 12(b)(6), require the court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Unlike a facial attack, a factual attack places the "jurisdictional facts [ ] in dispute," *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s]." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 158 (E.D.N.Y. 2022). In resolving factual attacks on jurisdiction, the court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

**B. Rule 12(b)(6) Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

5

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing FED. R. CIV. P. 8). In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Id.* But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id.*

Claims sounding in fraud must meet the heightened pleading standard established by Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b). The rule requires that a party "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

## DISCUSSION

### A. Subject Matter Jurisdiction

Because this case does not involve a federal question, subject matter jurisdiction is proper only if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. To establish diversity jurisdiction with respect to an LLC, a party must specifically allege the citizenship of every LLC member. *Carter*, 882 F.3d at 60. Plaintiff asserts its members are two natural persons, both citizens of the Russian Federation. *See* Pl.'s LLC Ltr. Defendant Cargo World is a citizen of New York, Am. Compl. ¶ 2, and Defendants Mirzoyan, Tor, and Doe are American citizens domiciled in New York, *Id.* ¶¶ 4-10. Therefore, because Plaintiff is a foreign citizen and all Defendants are U.S. citizens, diversity is complete. *See* 28 U.S.C. § 1332. Intercity alleges an amount in controversy exceeding $84,946.40—the amount it would have received were it able to fulfill the third-party agreement. *See, e.g. Dart Cherokee Basin Operating Co., LLC v.*

6

*Owens*, 574 U.S. 81, 87 (2014) ("plaintiff's amount-in-controversy allegation is accepted if made in good faith."). Accordingly, the statutory requirements of 28 U.S.C. § 1332 are satisfied.

Defendants seek to dismiss the complaint under Rule 12(b)(1), claiming jurisdiction is not proper because Intercity is not authorized to do business in New York. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem."), ECF 18-7, at 12-13 (citing NY LLCL § 808(a); NY BCL § 1312; *Netherlands v. Shipmortgage Corp. v. Madias*, 717 F.2d 731 (2d Cir. 1983)). Known as a "closed-door" statute, NY BCL § 1312(a) provides,

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute . . . as well as penalties and interest charges related thereto, accrued against the corporation.

NY BCL § 1312(a). The statute therefore "precludes the maint[enance] of an action by an unauthorized foreign corporation not only in the state courts of New York but also in the federal courts located in that state." *Netherlands Shipmortgage Corp.*, 717 F.2d at 735. Nearly identical language appears in NY LLCL § 808(a), which applies to limited liability companies. *Shell Consulting Group LLC v. Nims*, 198 N.Y.S.3d 507 (NY Cnty. Sup. Ct. 2023). Defendants assert that because Intercity conducted business in New York without being authorized to do so, it is not permitted to maintain this action under New York's closed-door statute. Defs.' Mem. at 13. Defendants point only to Intercity's contract in this case as satisfying the threshold of "doing business in this state. *See Id.* at 12.

However, the Second Circuit has stated that to come within New York's closed-door statute, NY BCL § 1312, "the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." *Netherlands Shipmortgage Corp.*, 717 F.2d at 736; *see*

7

*Audemars Piguet Holding S.A. v. Swiss Watch Intern., Inc.*, 46 F. Supp. 3d 255, 285 (S.D.N.Y. 2014) ("the intrastate activity of a foreign corporation must be permanent, continuous and regular."). Non-compliance with the statute is an affirmative defense, and the defendant bears the burden of establishing the section's requirements. *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 581 (S.D.N.Y. 2007).

Defendants assert that Plaintiff meets this standard—that Intercity "is engaged in a regular and continuous course of conduct in New York," Defs.' Mem. at 13—but supplies no support for its position. Plaintiff argues that the complaint alleges a single transaction between the parties, and there is no basis to infer that it does business in New York. Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss ("Pl.'s Opp") at 6.

The question of whether Intercity is "doing business" within New York for the purposes of the State's closed-door statute cannot be resolved without discovery. *See SD Protection*, 498 F. Supp. 2d at 581. If it is shown that Intercity is not in compliance, "'the more appropriate remedy [is] not outright dismissal of the complaint, but a conditional dismissal or a stay affording plaintiff an opportunity to cure this non-jurisdictional defect.'" *Id.* (quoting *Tri-Terminal Corp. v. CITC Industries, Inc.,* 78 A.D.2d 609 (1st Dept. 1980)). Failure to obtain a certificate "may be cured prior to the resolution of the action." *Id.* (citing *Uribe v. Merchants Bank of New York,* 266 A.D.2d 21 (1st Dept. 1999)).

More importantly, application of the New York closed-door statute is not a bar to this Court's subject matter jurisdiction. *Netherlands Shipmortgage Corp.*, 717 F.2d at 735 ("it is well-settled that B.C.L. § 1312 does not raise a jurisdictional bar."); *DeWan v. Seideman*, 17-CV-1315 (ER), 2017 WL 6048816, at *4 (S.D.N.Y. Dec. 5, 2017) (noting the same under NY LLCL § 808(a)); *Hot Roll Mfg. Co. v. Cerone Equip. Co.*, 329 N.Y.S.2d 466, 467 (1972) ("Failure of a

foreign corporation doing business in New York to comply with the requirements of subdivision (a) of section 1312 of the Business Corporation Law affects that corporation's legal capacity to maintain the action; it does not affect jurisdiction.").

Thus, Defendants' motion to dismiss for lack of jurisdiction is denied.

### B. Failure to State a Claim

#### 1. Breach of Contract

"To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citations omitted). To withstand a motion to dismiss on a breach of contract claim, a plaintiff must allege "the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) (citation omitted).

Defendants assert that Intercity has failed to state a claim because it has not identified the specific contractual provisions that were breached. Defs.' Mem. at 15. Defendants then argue the merits of Plaintiff's claim: Defendants could not have shipped the goods due to other binding terms of the contract and that Defendants were not in breach under the contract's force majeure clause. *Id.* at 15-16.

Defendants' arguments for dismissal of Plaintiff's breach of contract claim fail. First, Intercity has clearly alleged that an agreement was entered into between the parties, Am. Compl. ¶¶ 46, 57, 77, Intercity adequately performed, *id.* ¶¶ 78-79, Defendants breached by refusing to ship the goods paid for, *id.* ¶¶ 53, 80, and Intercity has suffered damages as a result, *id.* ¶ 82.

9

Second, it is not proper for the Court to consider Defendants' arguments about the merits of Plaintiff's claim on a motion to dismiss. *See Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017) (holding that, at the pleading stage, the court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff's claims will prevail).

### 2. Fraudulent Inducement

"To state a claim for fraudulent inducement under New York law, a plaintiff must allege: (1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." *City Calibration Centers Inc. v. Heath Consultants Inc.*, 727 F. Supp. 3d 332, 361 (E.D.N.Y. 2024) (citations omitted). As with any claim sounding in fraud, Plaintiff's fraudulent inducement claim is subject to the heightened pleading standard under Rule 9(b). FED. R. CIV. P. 9(b).

Defendants argue that Plaintiff's complaint conjures "meager facts, [which] are wholly insufficient to support [its] shogun pleading" and that, lacking "clear, specific facts to establish intent alone," the claim should be dismissed. Defs.' Mem. at 14. Plaintiff has alleged that Defendants misrepresented that they would procure and ship the WaveLight System to fulfill the terms of the contract, Defendants never intended to ship the goods, Am. Compl. ¶ 59-62, Plaintiff relied upon those representations, *id.* ¶ 63-65, and suffered damages as a result, *id.* ¶ 67.

Generally, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). Under New York law, a party's representation that it would perform under the contract is not sufficient to support a claim of fraud. *Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.*, 20-CV-4650 (ER), 2022 WL 912965, at *7 (S.D.N.Y. Mar. 29, 2022) ("even where a fraud claim is sufficiently pled, under

10

New York law, no fraud claim is cognizable if the facts underlying the fraud relate to the breach of contract.") (citation omitted)). Rather, to state a fraudulent inducement claim separate from a breach of contract claim, a plaintiff must allege a promise to do something other than what is expressly required by the contract itself. *See Wall*, 471 F.3d at 416 ("New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced.").

The Court, contemplating dismissal on this basis, directed Plaintiff to submit supplemental briefing. In response, Plaintiff submitted that courts in this Circuit will allow both claims to proceed "when the validity or scope of the contract is uncertain" and in "unusual situations where the defendant has not breached a contract nor committed a recognized tort." Pl.'s Supp. Br. at 2. However, those circumstances do not arise in this case. Defendants do not question the validity or scope of the contract itself. Further, to satisfy the first element of its fraudulent inducement claim, Plaintiff alleges that Defendants misrepresented their intention to procure and ship the WaveLight System. This representation is nothing more than a promise to perform the central term of the contract. Thus, Defendants' alleged misrepresentation cannot support Plaintiff's fraudulent inducement claim, and Plaintiff's fraudulent inducement claim is dismissed.

### 3. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that (1) defendants were enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). "[U]njust enrichment is a quasi-contract claim that can ordinarily be invoked only in the absence of a valid, enforceable contract." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp 3d 76, 120 (S.D.N.Y.

2020) (quoting *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1200 (S.D.N.Y. 1996) (collecting cases)). "And '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" *Id.* (alteration in original) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006)). "Unjust enrichment is not a catchall cause of action to be used when others fail . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).

To the extent that Defendants argue for dismissal of Plaintiff's unjust enrichment claim based on the merits by introducing additional factual allegations, Defs.' Mem. at 16-17, the Court declines to consider those arguments. *See Christiansen*, 852 F.3d at 201.

However, Plaintiff's claim fails because Plaintiff has not explained how its unjust enrichment claim is not merely duplicative of its other causes of action. *See, e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing unjust enrichment claim that relies on the same facts as plaintiff's other causes of action). Defendants have admitted to entering a contract with Intercity and have not contested the contract's validity. Defs.' Mem. at 8-9. "[W]here 'there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract' the unjust enrichment claim must be dismissed." *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014), *objections overruled sub nom. ImagePoint, Inc. v. JPMorgan Chase Bank,* 12-CV-7183 (LAK), 2014 WL 3891326 (S.D.N.Y. Aug. 8, 2014) (quoting *CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006) (dismissing plaintiff's unjust enrichment claim where

neither side contested the validity of the contract)).  Accordingly, Plaintiff's unjust enrichment claim is dismissed.

    **4. Conversion**

In New York, conversion constitutes "any act of dominion wrongfully exerted over another person's personal property inconsistent with that person's right in the property."  *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F. Supp. 3d 406, 414 (E.D.N.Y. 2022) (citation omitted).  To state a claim for conversion a plaintiff must allege "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *Id.*

"For a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate the factual allegations relating to breach of contract.  Rather, a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract."  *Flatscher v. Manhattan Sch. of Music*, 551 F. Supp. 3d 273, 288 (S.D.N.Y. 2021) (citations omitted) (dismissing conversion claim for failure to "allege any wrongful act that is separately actionable" from breach of contract).  "Thus, in the context of a dispute regarding a contract, the breach of contract must result in some wrong that is separately actionable, otherwise the conversion claim should be dismissed as duplicative."  *Jakob*, 639 F. Supp. 3d at 414 (dismissing conversion claim, premised on defendant's alleged breach of contract, as duplicative).

Plaintiff does not allege any separately identifiable act, damages, or wrongs to support its conversion claim separate from its breach of contract claim.  Rather, the claim is premised on Defendant's alleged breach in failing to ship the WaveLight System or return Plaintiff's funds.

13

Accordingly, Plaintiff's conversion claim is dismissed as duplicative of its breach of contract claim.

5. **Breach of Fiduciary Duty**

Under New York law, "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand. Instead, a plaintiff must allege the breach of an independent legal duty that springs from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 156 (S.D.N.Y. 2018) (citations omitted); *see also Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (breach of fiduciary duty claim is duplicative when "based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim.").

Defendants correctly argue that Plaintiff's fiduciary duty claim is duplicative of its breach of contract claim, *see* Defs.' Mem. at 19, as the two claims are premised on the same allegedly wrongful conduct and the alleged duty owed to Plaintiff appears to be premised only on the agency relationship created by the contract, *see* Am. Compl. ¶¶ 91-96. Both claims are premised on the same facts and seek the same damages. Accordingly, the breach of fiduciary duty claim is dismissed, and Defendants' motion to dismiss as to this claim is granted.

6. **Civil Conspiracy**

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). "All that an allegation of conspiracy can accomplish is to connect non-actors, who otherwise might escape liability, with the acts of their coconspirators." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010) (citing

14

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D.2d 50 (1982)). "To establish a claim of civil conspiracy, plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a common purpose or plan; and (4) resulting damage or injury." *Id.* (citing *Meisel v. Grunberg,* 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009)).

Defendants argue for dismissal of the civil conspiracy claim on the ground that Plaintiff has not alleged any facts demonstrating the existence of a conspiracy among all defendants, nor any unlawful acts. Defs.' Mem at 14-15. It is well established that conspiracy to commit fraud, *Agostini v. Sobol*, 757 N.Y.S.2d 555, 556 (App. Div. 2003), and conspiracy to breach a contract are not themselves cause of action, *Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*, 20-CV-4210 (AKH), 2021 WL 665031, at *3 (S.D.N.Y. Feb. 19, 2021). Plaintiff has not alleged an independent tort underlying its civil conspiracy claim. Accordingly, Defendant's motion to dismiss the civil conspiracy claim is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part: Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is denied; Defendants' motion to dismiss Plaintiff's breach of contract claim is denied; and Defendants' motion to dismiss is granted with respect to all other claims against Defendants Cargo World USA, Inc., and Levon Mirzoyan.

SO ORDERED.

                                                    /s/
                                                  ORELIA E. MERCHANT
                                                  United States District Judge

April 8, 2025
Brooklyn, New York